# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| ARTHUR O. ARMSTRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10cv802-REP |
| ) | |
| COMMONWEALTH OF VIRGINIA, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Defendants Commonwealth of Virginia and Attorney General Kenneth T. Cuccinelli's second motion to dismiss (Docket No. 13) and Plaintiff's numerous motions for leave to amend, to supplement, and for summary judgment (Docket Nos. 16, 17, 21, 22, 25, 26, 27, 28, 31, and 32). For the reasons set forth herein, it is this Court's recommendation that none of the pending motions be addressed at this time. Instead, for the reasons set forth herein, the Court recommends the entry of an ORDER requiring Plaintiff to show cause why his lawsuit should not be summarily dismissed and why he should not be sanctioned pursuant to Fed. R. Civ. P. 11.

# I. BACKGROUND

Arthur O. Armstrong ("Armstrong" or "Plaintiff"), a *pro se* litigant and self-proclaimed "semi-professional litigator,"[1] has now entered his first appearance in this District. An at-large search of the name "Arthur O. Armstrong" throughout all federal dockets in the United States yields a total of no less than 349 separately assigned case numbers with Armstrong appearing as plaintiff. Moreover, during just the last two decades, he has filed at least 126 lawsuits in other federal district courts, including the U.S. District Court for the Eastern District of Pennsylvania,[2] the Middle District of North Carolina,[3] the Eastern District of North Carolina,[4] and the Northern District of Georgia.[5] U.S. Courts of Appeal have not been spared, as no fewer than 219 appeals

---

[1] This reference has not appeared in the pleadings filed with this Court, but can be found in several of Plaintiff's prior litigious efforts. See, e.g., In re Arthur O. Armstrong, Case No. 2001MC130, 2001 U.S. Dist. LEXIS 9769, at *13 (E.D. Pa. July 10, 2001).

[2] E.D. Pa. Case Nos. 2:94cv05891-LS, 2:00cv36-EL, 2:01mc43-JS, 2:04cv3238-JS, 2:94cv3544-TON, 2:95cv6501-PD, 2:95cv6642-GP, 2:95cv7287-CRW, 2:95cv8042-HH, 2:96cv4277-JF, 2:96cv4368-AB, 2:96cv5480-JF, 2:96cv5740-LDD, 2:96cv5925-HH, 2:97cv393-CN, 2:97cv3887-JM, 2:97cv6007-AB, 2:97cv6124-CN, 2:97cv6130-HH, 2:97cv6178-HH, 2:97cv6308-HH, 2:97cv6944-CN, 2:98cv154-JP, 2:98cv2128-CN, 2:99cv825-HH, 2:99cv3424-HH, 2:99cv4188-AB, 2:99cv4586-HH, 2:99cv4587-HH, 2:99cv4699-HH.

[3] M.D.N.C. Case Nos. 1:00mc45, 1:00mc49, 1:00mc50-WO-WWD, 1:00mc64-WO-WWD, 1:00mc73, 1:00mc94-WLO, 1:00mc95-WLO, 1:00mc96-WLO, 1:00mc98-WLO, 1:00mc99-WLO, 1:00mc100-WLO, 1:00mc101-WLO, 1:00mc108, 1:00mc115-WLO, 1:00mc123-WO-WWD, 1:01cv810-WLO, 1:01cv827-WO, 1:01mc10, 1:01mc11, 1:01mc12, 1:01mc13, 1:01mc15, 1:01mc16, 1:01mc17, 1:01mc18, 1:01mc20, 1:01mc21, 1:01mc26, 1:01mc33, 1:09cv15-UA-WWD, 1:97cv1028-WO-WWD, 1:97cv1335-UA, 1:98mc59-WLO, 1:98mc62, 1:99mc30, 1:00mc71, 2:94cv318-HHW, 2:95cv434-WO-WWD, 2:95cv911-WLO, 2:96cv87-WO-WWD, 2:96cv89-WLO, 2:96cv855-WO-WWD.

[4] E.D.N.C. Case Nos. 5:00mc39, 5:00mc40, 5:01mc10, 5:01mc21, 5:01mc36-BR, 5:02mc18-BR, 5:02mc40-BR, 5:03cv941-BR, 5:03mc1-BR, 5:03mc7-BR, 5:03mc14-BR, 5:03mc20-BR, 5:03mc36-BR, 5:03mc42, 5:03mc43-F, 5:03mc44-BR, 5:03mc46-BR, 5:03mc47-F, 5:03mc49-BR, 5:03mc50-BR, 5:04cv11-BR, 5:04cv75-BR, 5:04cv154-BR, 5:04cv316-BR, 5:04mc2-BR, 5:05cv86-BR, 5:05cv136-BR, 5:05cv565-BR, 5:05cv759-D, 5:05cv778-BR, 5:05cv779-BR, 5:05cv780-BR, 5:05cv805-BR, 5:05cv806-BR, 5:05cv807-D, 5:05mc12, 5:06cv197-BR, 5:06cv495-BR, 5:06cv500-BR, 5:06mc5-D, 5:08cv633-BR, 5:08cv634-BR, 5:08mc9, 5:08mc11-D, 5:09cv55-BR, 5:09cv56-BR, 5:09cv57-BR, 5:09cv58-BR, 5:11cv73-FL.

[5] N.D. Ga. Case Nos. 1:02cv2629-RWS, 1:04cv17-RWS, 1:04cv749-RWS, 1:04cv2311-RWS.

are identified as having been initiated by Armstrong in the Third,[6] Fourth,[7] and Eleventh Circuits.[8]  Not included in the total are the eleven petitions for *writs of certiorari* that Armstrong has filed with the United States Supreme Court.[9]

In each and every case, Armstrong's litigation strategy of "papering" the court with repeated motions for leave to file or amend has overwhelmed the clerk's office involved and, as a result, impeded various courts' ability to fulfill their Article III responsibilities.  Each of Armstrong's federal lawsuits has been dismissed, typically on some basis involving a finding

---

[6] Third Cir. Case Nos. 00-1356, 99-8077, 00-8078, 01-1711, 01-1719, 01-1862, 01-8012, 02-3408, 02-3409, 02-8002, 02-8036, 03-1475, 03-2894, 03-3045, 04-1773, 04-8006, 05-1809, 05-1958, 05-1983, 05-1984, 05-8029, 09-8010, 09-8047, 09-8048, 09-8049, 09-8050, 09-8051, 09-8052, 09-8053, 09-8054, 09-8055, 09-8056, 09-8063, 10-8020, 10-8021, 10-8022, 10-8023, 10-8024, 10-8067, 10-8068, 10-8069, 10-8070, 10-8071, 10-8072, 10-8073, 10-8074, 96-1028, 96-1041, 96-1271, 96-1415, 96-1556, 96-1904, 97-1094, 97-1094, 97-1095, 98-1611, 98-1856, 98-2177.

[7] Fourth Cir. Case Nos. 00-1854, 00-1860, 00-1861, 00-2519, 00-2528, 00-2558, 00-2559, 00-2560, 01-1004, 01-1005, 01-1112, 01-1194, 01-1195, 01-1210, 01-1218, 01-1219, 01-1220, 01-1221, 01-1222, 01-1223, 01-1224, 01-1225, 01-1226, 01-1227, 01-1233, 01-1294, 01-1299, 01-1300, 01-1306, 01-1307, 10-1310, 01-1313, 01-1316, 01-1474, 01-1475, 01-1476, 01-1500, 01-1501, 01-1574, 01-1610, 01-1655, 03-248, 03-249, 03-250, 03-251, 03-252, 03-253, 03-254, 03-255, 03-256, 03-257, 03-260, 03-266, 03-267, 03-277, 03-293, 03-303, 03-304, 03-305, 03-306, 03-307, 03-308, 03-309, 03-310, 03-311, 03-312, 03-313, 03-319, 03-320, 03-321, 03-324, 03-325, 03-334, 03-1334, 03-1355, 03-1412, 03-1421, 03-1437, 03-1438, 03-1439, 03-1441, 03-1455, 03-1486, 03-1494, 03-1499, 03-1519, 04-108, 04-118, 04-134, 04-140, 06-1191, 06-1192, 06-1193, 06-1194, 06-1195, 06-1196, 06-1197, 06-1198, 06-1270, 06-1271, 06-1272, 07-1045, 08-1681, 09-1192, 09-1215, 09-1228, 09-1421, 09-1422, 09-1424, 09-1724, 09-1725, 09-1726, 09-1733, 09-1734, 09-1735, 09-1754, 09-1780, 09-1862, 09-1863, 09-1864, 09-1865, 09-1866, 09-1867, 09-1922, 09-1983, 09-2069, 09-2071, 09-2072, 09-2073, 09-2074, 09-2075, 09-2076, 09-2312, 09-2368, 10-1060, 10-2000, 10-2001, 10-2002, 10-2003, 10-2004, 10-2005, 10-2006, 11-1144, 11-1145, 11-1146, 11-1147, 11-1148, 11-1149, 11-1150, 11-1151, 11-1152, 11-1153, 11-1154, 11-1156, 11-1158, 11-1159, 11-1160, 11-1163, 98-2360, 99-2511, 99-2512.

[8] Eleventh Cir. Case No. 10-14348.

[9] <u>Armstrong v. Easley</u>, 552 U.S. 1025 (2007); <u>Armstrong v. City of Conyers</u>, 549 U.S. 1102 (2006); <u>Armstrong v. U.S. Court of Appeals</u>, 549 U.S. 1102 (2006); <u>Armstrong v. Howell</u>, 549 U.S. 1072 (2006); <u>Armstrong v. City of Conyers</u>, 549 U.S. 995 (2006); <u>Armstrong v. U.S. Dist. Court</u>, 549 U.S. 995 (2006); <u>Armstrong v. Howell</u>, 549 U.S. 824 (2006); <u>Armstrong v. City of Greensboro</u>, 536 U.S. 978 (2002); <u>City of Greensboro</u>, 536 U.S. 930 (2002); <u>Armstrong v. Phila. Bd. of Educ.</u>, 534 U.S. 893 (2001); <u>Armstrong v. Phila. Sch. Dist.</u>, 525 U.S. 879 (1998).

that it was "frivolous and vexatious." See, e.g., Armstrong v. Koury Corp., 16 F. Supp. 2d 616, 620 (M.D.N.C. 1998) ("Koury Corp. I"). Relevant to the present inquiry are two pre-filing injunctions issued pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the first of which imposes upon Armstrong an obligation that he first seek leave of the federal court in which he plans to commence future litigation before proceeding. Id. at 622. The second injunction, apparently designed to limit the burdens imposed by Armstrong in a single federal court, requires him to first obtain leave from the enjoining court before proceeding in *any* federal court. Armstrong v. School District of Philadelphia, No. 99-0825, 1999 U.S. Dist. LEXIS 14918, at *9 (E.D. Pa. Sept. 29, 1999) (hereinafter "Philadelphia Sch. Dist."). Armstrong has commenced the action in this Court without obeying either mandate.

**A.      Litigation History**

It is unnecessary to provide a complete history of Armstrong's repeated attempts to employ the judiciary as his chosen vehicle to harass would-be defendants. But because this is Armstrong's first appearance in this District, a brief summary is appropriate to establish with the reader a basic understanding of Armstrong's litigious malfeasance.[10]

Armstrong began his practice of "frivolous and vexatious litigation" first by targeting The Budd Company with an asbestos lawsuit. Armstrong v. The Budd Co., No. 95-07287 (E.D. Pa. filed Nov. 20, 1995). The result was a dismissal with prejudice, an order that Armstrong pay the defendant's attorney's fees, and a prohibition against further asbestos claims against The Budd

---

[10] In drafting this narrative, the Court initially sought to provide future defendants with a single repository of Armstrong's litigation history. The Court has abandoned that effort so as not to succumb to his strategy. Indeed, such an effort appears futile because Armstrong's efforts before the Fourth Circuit have even persisted while this Court has been preparing its Report and Recommendation, as he has continued to file supplemental appellate documents in other cases. See Fourth Circuit Case Nos. 11-1144, 11-1145, 11-1146, 11-1147, 11-1148, 11-1149, 11-1150, 11-1151, 11-1152, 11-1153, 11-1154, 11-1156, 11-1158, 11-1159, 11-1160.

Company, absent a supporting physician's report. In what may have been his first contemptible act against a court, Armstrong disregarded that order and was sanctioned as a result. Armstrong v. The Budd Co., No. 97-03887 (E.D. Pa. filed June 6, 1997).

During the same period, Armstrong began to harass a variety of defendants in the U.S. District Court for the Middle District of North Carolina. See, e.g., Koury Corp. I, 16 F. Supp. 2d at 618. Would-be defendants in North Carolina state and federal courts were of a wide variety, including the City of Greensboro Police Department, a number of its officers, Duke University Hospital, Armstrong's mortgagor, and an auto dealer. Id. In Koury Corp. I, District Court Judge Osteen issued an order that "[e]njoin[s] Plaintiff, or anyone acting on his behalf, from filing any new action or proceeding in *any* federal court, without first obtaining leave of *that* court." Id. at 621 (emphasis added) (the "MDNC Injunction"). Other aspects of the injunction imposed additional procedural hurdles specific to the Middle District of North Carolina. Those limitations failed to have the desired impact on Armstrong. Armstrong either ignored the injunction altogether or abused his right to file motions for leave to commence an action. Armstrong v. Koury Corporation, Case No. 1:97cv1028 (M.D.N.C. February 6, 2001 order amending injunction) ("Koury Corp. II"). In one instance, Armstrong filed twenty such motions in a matter of days, including two while Judge Osteen was in the process of addressing those previously filed. Id. Such action prompted Judge Osteen "to relieve the strain upon the office of the clerk" by amending his previous order in certain respects.[11] Id.

---

[11] Judge Osteen's amended order did not alter the pre-filing mandate at issue herein, and explicitly preserved those portions of the original order not otherwise amended. Accordingly, this Court construes the MDNC Injunction, as amended, to have required Armstrong to seek leave from this Court before initiating the present action.

As he pursued his efforts in North Carolina, Armstrong initiated a second series of cases in the Eastern District of Pennsylvania, where he continued his abusive practice by filing numerous lawsuits against the Philadelphia School District, each arising out of its decision to terminate Armstrong's employment. See In re Armstrong, No. 2001mc130, 2001 U.S. Dist. LEXIS 9769, at *4 n.3 (E.D. Pa. July 10, 2001) (collecting cases against Philadelphia School District). That series of cases led one judge to described Armstrong's repeated filings as an orchestrated "campaign of harassment against any and all parties even remotely related to his 1992 dismissal." Philadelphia Sch. Dist., 1999 U.S. Dist. LEXIS 14918, at *2. The court concluded that Armstrong's multitude of civil actions were "frivolous lawsuits that are vexatious and abusive of the judicial process." Considering the additional decade of abuse since that time, that court's conclusions now stand as an understated prophecy. To no avail, the court in that case enjoined "Armstrong, or any entity acting on his behalf, from filing any new action or proceeding in *any* federal court, without first obtaining leave of [the Eastern District of Pennsylvania]." Id. at *9 (emphasis added) (the "EDPA Injunction").

Neither injunction has ever deterred Armstrong. In In re Armstrong, No. 2001mc130, 2001 U.S. Dist. LEXIS 9769 (E.D. Pa. July 10, 2001), the Court provided a detailed narrative of Armstrong's first decade in "semi-professional" practice. In spite of that court's pre-filing injunction, Armstrong sued the IRS, Firstrust Bank, and continued to bring claims against The Budd Company and the Philadelphia School District. Id. at *3-6. Finding that Armstrong is fully aware of the strictures of the pre-filing injunctions, the Court sanctioned him pursuant to Fed. R. Civ. P. 11, stating:

> [Armstrong] did not state that his proposed filings complied with the individual criteria set forth by the Hutton [EDPA Injunction] and Osteen [MDNC Injunction] orders. Instead, Armstrong merely attached a blanket statement of

6

> alleged compliance with Judge Osteen's order and entirely ignored Judge Hutton's order.
>
> Armstrong's proposed filings are violative of the judges' orders and thus, cannot be warranted by existing law. Armstrong's delinquent behavior, coupled with his 'intolerable abuse of [the] judicial process' justifies sanctions under Rule 11. [citation omitted].

Id. at *12.

However, the imposition of sanctions have repeatedly failed to stop Armstrong as he continues to harass defendants in the enjoining courts, as well as in new forums. Beginning in the year 2000, and continuing through to this year, Armstrong has regularly appeared before the Eastern District of North Carolina. Finding that "[t]he majority of his cases have not even made it past a frivolity review," but that none of the filing restrictions "appears to have deterred him whatsoever," that Court placed a number of its own restrictions on Armstrong's ability to burden the Court. In re Armstrong, No. 5:03mc20-BR, Memorandum Order at 2 (E.D.N.C. January 18, 2006). That court ultimately found itself "at its wit's end" with Armstrong, specifically noting that his "baseless and repetitive actions have greatly taxed the resources of this court and the Clerk's office, and continue to do so." Id. Following its sister districts, the Eastern District of North Carolina thereupon entered an order closing all of Armstrong's pending cases, sanctioning him the sum of one-thousand dollars, and imposing a number of filing restrictions specific to Armstrong's activities before that Court. Id. at 4-6.

As noted above, U.S. Courts of Appeal have not been spared as well. Accordingly, Armstrong is now subject to a wide variety of filing restrictions imposed by the Third, Fourth, and Eleventh Circuit. See, e.g., In re Armstrong, No. 10-8067 (3rd Cir. Dec. 27, 2010); In re Armstrong, No. 10-14348-I (11th Cir. Dec. 13, 2010); Armstrong v. Howell, No, 06-1191 (4th Cir. April 26, 2006). For example, Armstrong may not file any appeal with the Fourth Circuit

"except by filing a notice of appeal that has been certified by the district court as not frivolous or a motion for leave to file a petition for writ of mandamus." In re Armstrong, No. 03-293, slip order at 2 (4th Cir. April 12, 2007).

On one occasion, the Fourth Circuit summarized its understanding of Armstrong's tactics as follows:

> Armstrong is a frequent litigant who abuses the judicial system through his totally frivolous and barely comprehensible filings. We have sanctioned him on three [prior] occasions. We share the district court's frustration with Armstrong and find no abuse of discretion on the district court's part.

Armstrong v. Howell, No. 06-1191, slip op. at 6. Relevant to this Court's inquiry is the Fourth Circuit opinion that modified the MDNC Injunction, but left intact that portion which requires "Arthur O. Armstrong [to] still seek leave of court prior to commencing any federal lawsuit." Armstrong v. Koury Corporation, Nos. 99-2511, 992512, slip op. at 3 (4th Cir. April 10, 2000).

**B.     Pleadings and Motions before this Court**

In just this one case, this Court has already observed many of the characteristic features of Armstrong's abusive litigation strategy during its albeit brief encounter with him. His Complaint alleges, in only conclusory fashion, that Armstrong "has been violated by a Virginia state trooper for transgression of the Fourth and Fourteenth Amendments to [*sic*] the Constitution of the United States." (Compl. ¶¶ 2, 3.) The Complaint then lists the following supposed causes of action:

> [A]rbitrariness, falsity, capriciousness, fraud, malice, RICO, deceit, misrepresentation, gross negligence, kidnapping, obstruction of justice, intimidation, threats, extortion, highway robbery, defamation, racial profiling and conspiracy, and without probable cause, stopped and detained plaintiff, made an entry, without warrant onto private areas on personal premise of plaintiff, invaded his privacy, searched and seized his property in violation of the Fourth Amendment to [*sic*] the Constitution of the United States.

8

(Id. ¶ 6.) One particularly telling allegation concerns the carjacking allegation found at Paragraph 7, which seeks recovery of costs associated with what -- a tow truck charge![12] (Id. ¶ 7.) Finally, the Complaint ends by asserting damages in the amount of ten million dollars ($10,000,000), though Armstrong has since sought to increase his demand to twenty-five million dollars ($25,000,000). (Id. ¶ 8; Docket No. 22-1 at ¶ 16.)

Since filing the Complaint, Armstrong has also begun to employ his well-known litigation tactic of "piecemeal" pleading in the form of multiple motions for leave to amend or to supplement his prior submissions. (Docket Nos. 16, 22, 25, 27, 31, 34.) In that same vein, he has now filed SIX separate motions in just this case seeking leave to file motions for summary judgment. (Docket Nos. 17, 21, 26, 28, 32, 35.) In each of his amended or supplemental pleadings, Armstrong expands the class of would-be defendants to include anyone even tangentially connected with the incidents at issue. (See, e.g., Docket No. 22-1 at ¶¶ 4-6.) The list now includes the following defendants: the Commonwealth of Virginia; its Attorney General, Kenneth Cuccinelli; Greensville County, Virginia; Greensville County Sheriff, J.R. Edwards; Deputy Sheriff Christopher Rose; the Sixth Judicial District of Virginia; its General District Court Chief Judge, J. Larry Palmer; its Clerk of Court, Sandra Andleton; Greensville Commonwealth Attorney, Patricia Watson; the Virginia Department of Motor Vehicles; its Commissioner, Richard D. Holcomb; its Director, M. N. Ford; and the Virginia Department of Taxation Court Debt Collection Office.

Supposedly adding "some flesh to the otherwise bare-bones" allegation of a conspiracy, he now lists "acts in furtherance" thereof to include a conclusory list of essentially fictitious

---

[12] Although "carjacking" in this context appears to be a fictitious intentional tort, Armstrong does not seek emotional damages on behalf of his vehicle.

causes of action, parroting the list found in his first pleading. (Compare Docket No. 22-1 at ¶ 9 with Compl. at ¶ 6.) He has also added a defamation claim based upon the issuance of a "Notice to Pay and of Suspension for Failure to Pay" related to what appears to be but a speeding ticket. (Docket No. 22 at ¶ 11, Ex. A.) Additional supplemental pleadings have alleged that the DMV and its Commissioner violated Armstrong's rights by suspending his driving privileges for failure to pay a $145 speeding ticket (Armstrong calls this an "extortion fee"), and that, by employing collection remedies, the Department of Taxation Court Debt Collections Office has also violated his rights. (Docket No. 31-1 at ¶ 6; Docket No. 34-2 at ¶ 5.)

As best as it can, the Court has construed the allegations in an attempt to reasonably understand what events have given rise to Armstrong's allegations. Incomprehensible though it may be, the Complaint only alleges that Armstrong received a speeding ticket, failed to appear at the required court date, had a judgment entered against him accordingly, failed to pay a fine, and as an obvious consequence of all of this, his license was suspended, car impounded, and collection procedures commenced against him. (Compl. at ¶¶ 6, 7; Docket No. 22-1 at ¶¶ 10, 11; Docket No. 27-1 at ¶ 6; Docket No. 34-1 at ¶ 5.) In conclusory fashion, he alleges that these events violated his rights, giving rise to a cause of action pursuant to 42 U.S.C. § 1983. For this, he seeks damages in the amount of twenty-five million dollars ($25,000,000) from the Commonwealth of Virginia, the City of Greensville, the police officer who issued the ticket, every court staff member whose name appears on any documentation of these events, as well as the several state and local agencies charged with implementing the consequences of the resulting judgment.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 11 exists to deter to future litigation abuse and to provide a remedy for such abuse. See In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998); see also Brubaker v. Richmond, 943 F.2d 1363, 1373-74 (4th Cir. 1991). Pursuant to Rule 11(b), pleadings may not be filed "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and the person filing a pleading certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Although *pro se* litigants are generally held to less stringent standards, they are not exempt from the strictures of Rule 11. Harmon v. O'Keefe, 149 F.R.D. 114, 116 (E.D. Va. 1993) (citing Business Guides v. Chromatic Communications Enters., Inc., 498 U.S. 533 (1991)). Moreover, courts have interpreted Rule 11(b)(2) to permit the imposition of sanctions when pleadings are filed in violation of a valid pre-filing injunction. See Morely v. Ciba-GeigyCy Corp., 66 F.3d 21 (2d Cir. 1995); In re Armstrong, 2001 U.S. Dist. LEXIS 9769 at *10. See also James Wm. Moore et al., *Moore's Federal Practice* § 11.11[7][a] (Matthew Bender 3d ed. 2011) ("Sanctions may be imposed for asserting claims that have been barred by the law of the case"). Rule 11 is violated if the filing party knows that existing law precludes any chance of success. Brubaker, 943 F.2d at 1373. In addition, a trial court may infer that a pleading was filed for an "improper purpose" when a party willfully files a baseless complaint. See In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990).

## III. DISCUSSION

In tandem, the EDPA and MDNC Injunctions impose upon Armstrong two procedural hurdles before he may pursue a claim in this Court. First, he must seek leave of court from the Eastern District of Pennsylvania, a requirement graciously imposed by that court to allow a court

11

already familiar with Armstrong's work to screen his future cases for frivolity. In accordance with the MDNC Injunction, he must also file a motion for leave with this Court, presumably to put the Court on notice of his propensity to initiate frivolous litigation elsewhere. He has disregarded both injunctions in filing the case before this Court, and that delinquency is, alone, sanctionable. See Armstrong, 2001 U.S. Dist. LEXIS at *12. Enforcement of such pre-filing injunctions is particularly necessary in this age of limited judicial resources that are strained to address and resolve non-frivolous claims.

In the interest of hopeful finality, the Court will explain why Armstrong's present lawsuit appears to be patently frivolous. Simply put, the Complaint, together with each subsequently filed supplemental and amended pleading, cannot withstand scrutiny under Fed. R. Civ. P. 12(b)(6). Without any factual allegations of misconduct, the events referenced in the pleadings are not actionable. In only conclusory fashion does Armstrong assert that his rights were violated, and the Court simply cannot infer such violation(s) from unasserted facts. See Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Moreover, the incomprehensible prose is further obfuscated by the inconsistencies found in subsequent "supplemental" pleadings that have been filed. Is the Court to construe each subsequent "supplemental" pleading as replacing all prior pleadings, or only the inconsistent portions therein? Whatever the answer, Armstrong has failed to state any recognizable claim for relief in each of his desperate and useless attempts.

Of course, failure to state a claim is not usually sanctionable, and generally yields leave to amend, especially where *pro se* litigants are concerned. In this case, however, the pattern of abuse to date already mirrors that which is reflected in Armstrong's prior abusive litigation. For

example, as the court noted in Philadelphia Sch. Dist., 1999 U.S. Dist. LEXIS 14918, at *2, he has a tendency to file an action against everyone "even remotely related" to the events at issue. Here, he has sued every person whose name appears on any document received in relation to the subject speeding ticket. And of course, the Court cannot ignore the inordinate, demanded sum of twenty-five million dollars ($25,000,000), the calculus of which appears to be, at best, whimsical. Continued litigation in the face of repeated sanctions for this pattern of abuse shows that Armstrong knows the likely consequences of his actions, but he proceeds nonetheless. Such conduct supports the imposition of additional sanctions. See In re Kunstler, 914 F.2d at 523.

It is worth noting that the nature of this case is *exactly* the same as a new "species" of cases "conjured up" and initiated by Armstrong over the last few years. For example, in Armstrong v. City of Durham, No. 1:09cv15 (M.D.N.C. filed January 6, 2009), Armstrong filed a complaint that includes, nearly *verbatim*, the same list of essentially, if not completely, fictitious causes of action set forth, *supra*, at section I(B). Significantly, that case arose out of the issuance of a speeding ticket to Armstrong for driving seventy-one miles per hour in a fifty-five mile per hour zone, and he sought one-hundred million dollars in damages. In another case, again involving nearly the exact same list of claims, Armstrong upped his ante, and sought one-hundred fifty million dollars for an accusation that he was driving under the influence. Armstrong v. City of Knightdale, No. 5:09cv56-BR (E.D.N.C. filed January 15, 2009). Recognizing similar deficiencies found in Armstrong's prior lawsuits, the Court summarily dismissed his claims and sanctioned him three-hundred fifty dollars. Id. (Order dated March 9, 2009). The fact that Armstrong continues to parrot his previously-filed pleadings is further evidence of the "improper purpose" that infiltrates the case currently before this Court, as he must know by now the outcome of such conduct. See In re Kunstler, 914 F.2d at 523.

13

Armstrong may be the most prolific active serial-filer in the United States. Considering that he has almost always been required to pay the full filing fee involved ($350), his hundreds of legal actions must have cost him thousands of dollars. Whatever drives him, this Court cannot entertain his vexatious enterprises at the expense of this, or any other Court's own integrity, or at the expense and understandable frustration of his would-be targets. "Quite aside from the interests of the individual parties in a lawsuit, a district court has an important interest . . . in ensuring that a party does not use the court as an instrument of fraud or deceit." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 654 (4th Cir. 2006). To that end, federal courts have inherent power "to dismiss an action *sua sponte* 'when a party deceives [the] court or *abuses the process* at a level that is utterly inconsistent with the orderly administration of justice or *undermines the integrity of the process*." Id. (emphasis added) (citations omitted). In addition, "[f]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984); see Graham v. Riddle, 554 F.2d 133, 134-35 (4th Cir. 1977). Considering Armstrong's lengthy history of abusing court procedures, including those trends which have already emerged in this case, the Court must first ensure that judicial integrity can be maintained should Armstrong be permitted to pursue his alleged claims.

It should be noted as well that "the courthouse doors are not shut" on Mr. Armstrong -- he must merely "open those doors" by following the required procedures set forth in the various pre-filing injunctions currently in force. He has blatantly ignored both injunctions. And because the MDNC Injunction required Armstrong to first seek leave from this Court before filing, presumably to permit a so-called frivolity analysis, it is recommended that he should not be allowed to proceed until he can satisfy the Court that his claim is, indeed, non-frivolous. For

these reasons, it is recommended that Armstrong be ordered to show cause why he should not be sanctioned for filing what appears to be yet another of his ongoing frivolous and vexatious lawsuits.

## IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Plaintiff be ORDERED to show cause why his lawsuit should not be summarily dismissed as an apparent violation of two federal pre-filing injunctions, and as yet another example of his frivolous and vexatious litigation. Moreover, the Order should provide Plaintiff with NOTICE of this Court's intent to inform both enjoining Courts of Plaintiff's violation of their Orders, as well as this Court's intention to enter its own pre-filing injunction.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne, with notification to all counsel of record, and to the Plaintiff by registered U.S. mail to his address of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                                            Dennis W. Dohnal
                                            United States Magistrate Judge

Richmond, Virginia
Dated: March 16, 2011